UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CORDELL FORD,

          Plaintiff,

v.                                                     Case No. 23-cv-1467-pp

CO BELL, *et al.*,

          Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Cordell Ford, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This order resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

      On November 14, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $23.85. Dkt. No. 6. The court received that fee on December

1

12, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued Officer Bell, Officer Poch, Sergeant Demer, Officer Stroughter, Sergeant Lambert, Officer Kramer, Officer Bitner, Nurse Vick, Officer Marwitz and Nurse Andrea Bleeder. Dkt. No. 1 at 1. He alleges that in early April 2023, he was on observation status and checked on every fifteen minutes. Id. at 2. At 10:15 a.m., while defendant Bell conducted his observation rounds, the plaintiff allegedly showed him a razor, "with the intent to self-harm[.]" Id. at 2-3. The plaintiff states that he told defendant Bell, "Let them know what I have!" Id. at 3. Defendant Bell allegedly walked away, contacted the sergeant and continued to make rounds. Id. The plaintiff states that he covered his window and did not respond to officers. Id. The plaintiff allegedly was removed from the cell. Id. The plaintiff states that he believes Bell is racist. Id.

The plaintiff alleges that in early May 2023, he felt the urge to self-harm and Officer Poch failed to protect him from self-harm. Id. Poch allegedly "started using abusive language, called plaintiff multiple bitches and hos, blow kisses; plaintiff showed Poch a razor and stated 'will self-harm,' and Poch

3

walked off[.]" Id. The plaintiff states that Poch did not have his body camera on during the incident. Id. Later, the plaintiff requested a form from Officer Longridge (not a defendant); Poch told the plaintiff that he could not have the form because he was on observation status and that he could only receive an HSU or PSU form. Id. at 4. The plaintiff and Poch allegedly started arguing back and forth, Poch was heard telling the plaintiff "You're a bitch first" and there was an uproar from other incarcerated individuals. Id. The plaintiff states that he told Poch that he would self-harm if Poch walked away, then Poch walked away from plaintiff's cell. Id. The plaintiff states that Poch "showed deliberately indifferent to plaintiff mental health, safety and cruel & unusual punishment, which later led to plaintiff self-harm." Id. A couple minutes later, defendants Demer and Poch allegedly arrived at the plaintiff's cell and showed little to no regard about the plaintiff having a razor on observation; the plaintiff says that the whole time, the razor was hidden in his mouth. Id.

The plaintiff alleges that on June 13, 2023, Officer Stroughter was doing observation checks at 3:41 p.m. when he arrived at the plaintiff's cell to find the window fully covered with paper. Id. at 4-5. Stroughter allegedly knocked on the door and asked if the plaintiff was okay. Id. at 5. The plaintiff states that he did not respond, Stroughter had no visual verification into the cell and Stroughter walked away. Id. The plaintiff alleges that at 3:59 p.m., Stroughter was doing his "obs checks" and when he arrived at the plaintiff's cell, he found the plaintiff non-responsive, lying on his side with a large pool of blood in the back of the cell and blood scattered throughout the cell and on the plaintiff's left arm. Id. Stroughter allegedly began to bang on the door and yell the plaintiff's name. Id. The plaintiff states that Lieutenant Fisher (not a defendant) was notified, and he attempted to gain a response from the plaintiff by yelling

4

his name. Id. The plaintiff alleges that staff were notified to put protective equipment on for a cell entry. Id. The plaintiff asserts that he was placed in a restraint chair and transported to the nurse's treatment room; the plaintiff had cut himself with a razor. Id. Defendants Stroughter and Lombert allegedly showed deliberate indifference to the plaintiff's mental health and safety. Id.

The plaintiff alleges that on June 15, 2023 at 11:09 p.m., Officer Morwitz was doing his rounds and the plaintiff, who had his arm out of the cell trap door, told him, "I will self-harm"; Morwitz walked away. Id. at 6. At 11:16 p.m., Officer Kramer allegedly walked past the plaintiff's cell and the plaintiff, who still had his arm out of the cell, told Kramer, "I will self-harm before the night is over." Id. The plaintiff states that at 11:33 p.m., Kramer walked past his cell again and the plaintiff yelled to another incarcerated individual, "I cut my arm, and CO Kramer just walked past me!" Id. Kramer allegedly said the plaintiff did not want Kramer near him, and kept walking. Id. The plaintiff alleges that at 12:01 a.m., Officer Bitner walked past the cell and the plaintiff still had his arm hanging out of the cell. Id. at 7. At 12:07 a.m., the plaintiff allegedly told Kramer as she was doing her rounds that he had cut his arm and he was holding his arm out of the trap door. Id. He states that they discussed the cutting; Kramer told him to stop, then left the range. Id.

The plaintiff alleges that at 12:25 a.m., Nurse Vick, Kramer and Marwitz came to the plaintiff's cell. Id. In the dark hallway, Vick allegedly tried to remove the staples form the plaintiff's arm. Id. The plaintiff also states that she cleaned the wound with "unsanitary tools" and gave the plaintiff soap and toilet paper so he could wash the blood off his hands. Id. at 7-8. Kramer allegedly never verified the plaintiff's cut or called a supervisor to address the plaintiff's

mental health issues. Id. at 8. Vick allegedly showed disregard for the plaintiff's mental health, safety and self-harm. Id.

The plaintiff alleges that a few days later, he had to remove the rest of the staples that he put in his self-harm wound. Id. He states that he should have been pulled out of his cell for his injury to be treated. Id. The plaintiff allegedly told Nurse Bleeder that he put a pencil, cotton and paperclips in his wound, and she responded that she didn't believe him. Bleeder allegedly said that they would just watch for an infection and "if [he] get[s] infected, then that's what [he] get[s] for putting shit in [his] arm." Id. The plaintiff alleges that three months later, on September 15, 2023, he was transferred to Waupun Memorial Hospital for surgery to have foreign items removed from his left arm. Id. at 9.

The plaintiff claims that the defendants violated his constitutional rights and that they acted with deliberate indifference to his mental and medical needs. Id. at 8. He seeks damages and injunctive relief. Id. at 9-10.

C.  Analysis

Failure to provide protection from suicide or self-harm constitutes an Eighth Amendment violation if deliberate indifference by prison officials to an incarcerated individual's welfare effectively condones the harm by allowing it to happen. Eagen v. Dempsey, 987 F.3d 667, 693-94 (7th Cir. 2021) (citations omitted). To state a claim under the Eighth Amendment, the plaintiff must allege: (1) "he presented an objectively serious medical need;" and (2) "a defendant [ ] responded [ ] with deliberate indifference, thereby resulting in some injury." Lord v. Beahm, 952 F.3d 902, 904 (7th Cir. 2020) (citing Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016)). A medical condition is objectively serious if it is "so obvious that even a lay person would perceive the need for a doctor's attention." See Roe v. Elyea, 631 F.3d 843, 857 (7th Cir.

6

2011). Regarding the second prong, a defendant responds with deliberate indifference when he or she "actually knew of and disregarded a substantial risk of harm." Petties, 836 F.3d at 728. "This requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" Lisle v. Welborn, 933 F.3d 705, 716-17 (7th Cir. 2019) (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)).

The plaintiff has not stated a claim based on the incidents that allegedly occurred in early April 2023, early May 2023 and June 13, 2023. He alleges that in early April 2023, he told Officer Bell he was going to harm himself. But Bell allegedly took action by informing the sergeant and then staff returned to the plaintiff's cell. And the plaintiff does not say that he injured himself on this occasion. Because Bell did not disregard the risk of harm to the plaintiff, the plaintiff has not stated a claim against Bell based on this incident.

The plaintiff has not stated a claim against defendants Poch and Demer based on the events that allegedly took place in early May 2023. While Poch's alleged conduct was unprofessional, he did not disregard a risk of harm to the plaintiff. The plaintiff states that he told Poch that he would self-harm if Poch walked away, and that Poch did walk away, but that Poch returned a couple of minutes later with Demer. The plaintiff has not stated a claim against Poch or Demer.

The plaintiff also may not proceed on a claim against defendant Strougher based on the events described on June 13, 2023. The plaintiff alleges that at 3:41 p.m., while doing his observation rounds, Strougher was unable to see the plaintiff because the plaintiff had his window covered. Strougher allegedly asked the plaintiff if he was okay, the plaintiff did not respond and Strougher left. When Strougher returned at 3:59 p.m., he

7

allegedly could see into the cell and saw that the plaintiff had cut himself and that there was a pool of blood in the cell. Staff immediately acted to get the plaintiff out of the cell and treat his razor cuts. The plaintiff has not alleged that Stroughter knew the plaintiff was going to harm himself, so Stroughter cannot be held liable. The plaintiff claims that defendant Lambert also acted with deliberate indifference, but he has not made any allegations against Lambert and thus does not state a claim against Lambert.

The plaintiff may proceed on Eighth Amendment claims based on the events that allegedly occurred on June 15, 2023. He alleges that defendants Marwitz, Kramer and Bitner disregarded his comments that he was going to harm himself and that he had harmed himself. The plaintiff also may proceed on Eighth Amendment medical care claims regarding the way his wounds were treated. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). He may proceed on a medical care claim against defendants Vick, Kramer and Morwitz for the events that allegedly took placed on June 15, 2023, and against defendant Bleeder for the events that took place a couple days later. The plaintiff may proceed against defendants Marwitz, Kramer, Bitner, Vick and Bleeder in their individual capacities. The court will dismiss the remaining defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that defendants CO Bell, CO Poch, Sgt. Demer, CO Stroughter and Sgt. Lambert are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on

defendants CO Marwitz, CO Kramer, CO Bitner, RN Vick and RN Andrea Bleeder. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$326.15** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 9th day of April, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**