UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CORDELL FORD,

              Plaintiff,

v.                                                  Case No. 23-cv-1467-pp

RICARDO STRAUGHTER, *et al.*,

              Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 38), CONSTRUING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING MOTION (DKT. NO. 49) AND DENYING PLAINTIFF'S MOTIONS FOR SANCTIONS (DKT. NOS. 59, 63)**

      Plaintiff Cordell Ford, who is confined at the Kenosha County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his constitutional rights. He claims that the defendants failed to prevent him from harming himself and did not provide him with adequate medical care when he was incarcerated at Waupun Correctional Institution. Dkt. No. 10. This decision addresses the plaintiff's motion for summary judgment, dkt. no. 38, the defendants' motion for partial summary judgment (filed as a motion for summary judgment), dkt. no. 49, and the plaintiff's motions for sanctions, dkt. nos. 59, 63.

**I.    Procedural Background**

      The court screened the amended complaint (Dkt. No. 10) and allowed the plaintiff to proceed on the following claims: (1) an Eighth Amendment claim against defendants Ricardo Straughter and Alfonso Lambert for failure to prevent harm on June 13, 2023; (2) an Eighth Amendment claim against

1

defendants Erik Marwitz, Barbara Kramer and Dustin Bittner for failure to prevent harm on June 15, 2023; (3) an Eighth Amendment claim against defendants Marwitz, Kramer and Gwendolyn Vick for failure to provide adequate medical care on June 15, 2023; and (4) an Eighth Amendment claim against Andrea Bleecker for failure to provide adequate medical care several days after June 15, 2023. Dkt. No. 19 at 5. On April 11, 2025, the court granted the defendants' motion for partial summary judgment on exhaustion grounds as to the plaintiff's fourth claim, against Bleecker, and dismissed defendant Bleecker. Dkt. No. 34.

## II. Facts[1]

### A. Facts Included in this Section

This section recounts the defendants' material facts related to the plaintiff's claims based on the events that occurred on June 15, 2023, including any disputes raised by the plaintiff in his response to the defendants' proposed findings of fact (Dkt. No. 65).[2] This section does not include facts based on the June 13, 2023 claim. Although his motion for summary judgment addresses that claim, the plaintiff did not include proposed findings of fact along with his motion for summary judgment, as required by Civil Local Rule 56(b)(1)(C) (E.D. Wis.).[3] See Dkt. No. 38. And the defendants' motion for

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

[2] The plaintiff submitted proposed findings of fact in response to the defendants' motion for summary judgment, dkt. no. 66, but because the proposed facts do not cite to the record and are not otherwise verified, the court has not considered them at summary judgment.

[3] In his motion for summary judgment, the plaintiff states that he adopts "the sworn civil complaint (SCC) Dkt. # 1[.]" Dkt. No. 38 at 2. The amended complaint, dkt. no. 10, is the operative complaint (not the complaint at Dkt.

2

summary judgment does not address the plaintiff's claim based on the June 13, 2023 allegations. That is, the defendants have not responded to the plaintiff's argument that he is entitled to summary judgment on that claim, have not argued that *they* are entitled to summary judgment based on that claim and have not included proposed facts for the June 13, 2023 incident.

B.     Facts Related to June 15, 2023 Claims

The plaintiff was incarcerated at Waupun Correctional Institution during the events described in the amended complaint. Dkt. No. 51 at ¶1. During that time, defendants Marwitz, Bittner and Kramer were employed by the Wisconsin Department of Corrections (DOC) as correctional officers at Waupun and defendant Vick was employed by the DOC as a nurse at Waupun. Id. at ¶2-5.

On June 15, 2023, the plaintiff was housed in the restrictive housing unit (RHU). Id. at ¶6. The RHU houses incarcerated individuals who are on administrative confinement, controlled segregation, disciplinary separation, observation status, protective confinement and temporary lockup status. Id. at ¶7. Individuals housed in the RHU typically present a high security risk, including injury to others and/or self-injury. Id. at ¶8.

On June 15, 2023, Marwitz was assigned to the RHU as a third shift range officer, working from 10:00 p.m. to 6:00 a.m. Id. at ¶9. A few minutes before Marwitz's encounter with the plaintiff, he learned that the plaintiff was holding open his door trap. Id. at ¶12. Marwitz does not believe that at that moment, he knew why the plaintiff was holding the door trap open, but he

---

No. 1). The original complaint and amended complaint are identical regarding the plaintiff's June 15, 2023 allegations. See Dkt. No. 19 at 5. But the original complaint does not allege sufficient facts to state a claim for the events that occurred on June 13, 2023, dkt. no. 7, while the amended complaint does, dkt. no. 19.

3

thought he had a good rapport with the plaintiff and could convince him to close the trap. Id. It is a security threat when an incarcerated person holds his trap door open. Id. at ¶14. The traps are intended primarily for passing meals, medications or other necessities between staff and the incarcerated individual. Id. Traps are opened for these purposes and promptly closed. Id. Incarcerated individuals who do not allow staff to close the trap can stick their arms out of the cell, which could allow them to grab staff or other incarcerated persons who are being escorted down the hall. Id. at ¶15. Incarcerated persons also can also throw items or expel bodily fluids through the trap. Id.

Marwitz approached the plaintiff's cell at about 11:09 p.m. but did not get right up to the cell because the plaintiff continued to hold his trap door open with his entire arm sticking out of the trap. Id. at ¶13. The plaintiff spoke to Marwitz, but Marwitz could not hear him because of noise in the RHU, so Marwitz said, "Huh?" Id. at ¶16, Ex. 1005 (Marwitz Body Worn Camera (BWC) 6.15.23) at 00:04. The plaintiff stated, "Tell him I said what up." Id. at ¶17, Marwitz BWC 6.15.23 at 00:05. Marwitz said, "Who?" Id. at ¶18, Marwitz BWC 6.15.23 at 00:08. The plaintiff said, "Spiderman." Id. at ¶19, Marwitz BWC 6.15.23 at 00:09. The plaintiff was referring to Sergeant Dustin Wiltgen, whose nickname is Spiderman. Id. at ¶20. Marwitz still could not hear the plaintiff clearly, so he asked him, "Tell him say what?" Id. at ¶21, Marwitz BWC 6.15.23 at 00:10. The plaintiff said, "Tell him I say, what up. What's going on? What's happening?" Id. at ¶22, Marwitz BWC 6.15.23 at 00:11. Then Marwitz said, "Ok, I'll let him know." Id. at ¶23, Marwitz BWC 6.15.23 at 00:13. Marwitz did not know what the plaintiff was referring to, but he assumed the plaintiff was waiting for some sort of response from Wiltgen. Id. at ¶24. Marwitz left the

4

range and immediately informed Wiltgen of his conversation with the plaintiff. Id. at ¶25.

While Marwitz spoke with the plaintiff, he did not observe a wound or blood or any type of injury reflecting that the plaintiff had self-harmed. Id. at ¶26. The plaintiff did not tell Marwitz that he had self-harmed or that he was going to self-harm. Id. at ¶27. Marwitz did not ignore the plaintiff or walk away from his cell. Id. at ¶28.

On June 16, 2023 at 12:01 am, Bittner walked past the plaintiff's observation cell C-230. Id. at ¶48. The plaintiff did not say anything to Bittner. Id. Between June 15, 2023 and June 16, 2023, Kramer walked past the plaintiff's cell and spoke with him several times. Id. at ¶49.

At about 12:30 a.m., Kramer contacted Vick while she was in the health services unit (HSU). Id. at ¶30. Kramer stated the plaintiff had been refusing help and manipulating a wound on his arm and now was asking to be seen by the HSU. Id. Vick reported to the RHU, then Kramer and Marwitz accompanied her to the plaintiff's cell front. Id. at ¶31. As a correctional officer, Marwitz does not have the authority to interfere with a medical professional performing a medical assessment. Id. at ¶32.

When Vick arrived at the plaintiff's cell, she observed that the plaintiff had two wounds on his left forearm, one right above the other. Id. at ¶34. One wound appeared to be new, and the other appeared to be an old wound that the plaintiff had reopened. Id. One wound was seven to eight millimeters, and the other was less than eleven to twelve millimeters. Id. Both were lacerations, with one having a puncture wound from a wire staple, but with no active bleeding. Id. in In one of the wounds, Vick observed a staple sticking out of the plaintiff's left forearm. Id. at ¶35. Initially, the plaintiff refused to let Vick

5

remove the staple but then consented, so she was able to remove the staple intact. Id. at ¶36. It had been manipulated into one straight piece. Id. Vick removed the staple with a sterilized tweezer. Id. at ¶37. She cleaned each wound with Dermal wound cleanser, then applied a 2x2 wet gauze followed by a 4x4 gauze to cover both wounds. Id.

Because it was 12:30 a.m., the tier appeared darker than normal, but the plaintiff's cell light was on, and Marwitz turned on his flashlight so Vick could clearly see the plaintiff's wounds. Id. at ¶39. It was not necessary for the plaintiff to be removed from his cell so that Vick could treat him. Id. at ¶40. Vick's treatment would have been the same whether the plaintiff was treated at his cell front or in the RHU HSU exam space. Id. The plaintiff had access to a sink for water in his cell and Marwitz stated that he would provide the plaintiff with liquid soap and sixteen "squares" of tissue. Id. at ¶41. Because the plaintiff was on clinical observation, he was very limited in the type and amount of property he was allowed to have in his cell. Id. at ¶42. Vick did not refer the plaintiff to psychological services because he already was on clinical observation. Id.

Vick ordered seven-day wound care, which means that the plaintiff was scheduled to be seen by an HSU nurse every day for the next seven days so his wounds could be assessed and checked for infections, and so he could receive a daily dressing change. Id. at ¶43. Any infection for which the plaintiff was treated after June 16, 2023 regarding his left forearm was not a direct result of how Vick provided wound care. Id. at ¶44. During this encounter, Marwitz had very little interaction with the plaintiff but responded to his questions. Id. at ¶46.

In his response to the defendants' proposed findings of fact, the plaintiff references his declaration. Dkt. No. 65. In the declaration, the plaintiff states: "On 6-15-23 starting at 10:00 PM I made CO Marwitz, CO Krammer [sic], CO Bittner [aware] that I was bleeding and self harming multiple times. I was allowed to cut myself with a stap[]le for several hours while be[ing] on observation status[,] a status that's supposed to protect me from myself." Dkt. No. 66-1 at ¶4. The plaintiff also states that he yelled multiple times that he was actively self-harming and bleeding "so much that the[y] closed the hallway doors." Id. at ¶5. He says that when he finally got help "it was a rushed job and Nurse Vick didn't get all of the staple out of my forearm when she said in her declaration that she did." Id. at ¶6.

The plaintiff also references an inmate complaint that he submitted and that the institution complaint examiner (ICE) affirmed. He filed a copy of the ICE report that contains the following summary of facts regarding the plaintiff's claim that staff did not address his self-harm on June 15 and 16, 2023:

> Inmate claims that while on observation he was allowed to self harm with his arm out of his trap. Claims staff watched him cut with a staple and did nothing.
>
> Video was viewed and on 6/15/23 at 11:09:42pm, CO Marwitz (BWC 3seg3) doing his observation round is stopped by [the plaintiff] and he tells CO Marwitz to tell spiderman what's up. The inmate has his arm out of the trap and states nothing about harming himself and is not harming himself at that time.
>
> At 11:16:39pm, CO Kramer (BWC 3extra2) walks past his cell doing observation rounds and the inmate has his arm hanging out the trap and says nothing to CO Kramer. He is also not cutting himself at that time.
>
> At 11:33:21pm, CO Kramer walks past his cell doing observation rounds and the inmate has his arm hanging out the trap and says nothing to CO Kramer. After she has passed and is walking off of the range, [the plaintiff] yells to another inmate that he has cut his arm and she walked past him. CO Kramer state, "you don't want

7

me near you, you don't want me talking and to keep moving so that's what I'm doing" and she leaves the range. There is nothing in the DOC-112A regarding his claims.

      At 11:46:24pm, CO Kramer walks past his cell doing observation rounds and the inmate has his arm hanging out the trap and says nothing to CO Kramer.

      At 12:01:35am, CO Bittner (BWC 3seg2) is doing observation rounds and you can see [the plaintiff's] arm hanging out of the trap and there is no evidence he is cutting his arm as it is hanging out of the trap.

      At 12:07:32am, [the plaintiff] tells CO Kramer as she is doing her observation rounds that he has cut his arm and is holding it out of the trap. They have a discussion about the cutting and she tells him to stop and leaves the range.

      At 12:17:26am, [the plaintiff] asks CO Kramer for help because he has cut his arm. They have another discussion and she leaves the range and tells him she is getting help.

      At 12:25:15am, Nurse Vick, CO Kramer and CO Marwitz go to [the plaintiff's] cell and Nurse Vick removes the staple from his arm, cleans the wound and puts dressing on it. Inmate is then given soap and some toilet paper so he can wash the blood on his hands.

      Recommendation is to affirm that [the plaintiff] did make a claim to CO Kramer that he had cut his arm at 11:30pm and she did not verify if it was cut or call a supervisor to address the issue. A copy will be sent to the Security Director to review.

Dkt. No. 38-1 at 50-51.

### III. Analysis

    A.   <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Ames v. Home Depot U.S.A., Inc.</u>, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable

8

substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

The plaintiff contends that he is entitled to summary judgment for his claims regarding the June 13, 2023 and June 15, 2023 incidents. Dkt. No. 38 at 7. Regarding the June 13, 2023 incident, the plaintiff states that defendants Straughter and Lambert acted with deliberate indifference because they walked away from his cell after he told them he had a razor blade and wanted to kill himself. Id. at 3-6. The plaintiff also contends that the defendants involved in the June 15, 2023 incident acted with deliberate indifference. He states that Kramer, Bittner, Vick and Marwitz knew he was cutting himself and did nothing to stop him. Id. at 6. According to the plaintiff, Kramer did not follow protocol, Bittner and Marwitz did multiple rounds while the plaintiff held his hand out of the trap and did not stop him from cutting himself, and Vick "went

9

beyond her job description" to remove a paperclip from his arm in an unsanitary environment which caused an infection. Id. at 6-7.

In the defendants' combined motion for summary judgment and response to the plaintiff's motion for summary judgment, they contend that the plaintiff's failure-to-protect claim must fail because Bittner and Marwitz did not act with deliberate indifference and because the plaintiff cannot show a recoverable injury. Dkt. No. 50 at 8-13. They also contend that the plaintiff's medical care claim fails because Vick provided appropriate medical care and because Marwitz and Kramer reasonably deferred to Vick's medical judgment. Id. at 15-17. Finally, the defendants contend that they are entitled to qualified immunity. Id. at 17-20.

In response to the defendants' motion for summary judgment, the plaintiff contends that he is entitled to summary judgment on his claim based on the June 13, 2023 incident, pointing out that the defendants did not address that claim in their combined motion for summary judgment and response to his motion. Dkt. No. 64 at 6-8. Regarding the June 15, 2023 incident, he contends that Kramer, Marwitz and Bittner were deliberately indifferent because they knew he was harming his arm but ignored him. Id. The plaintiff further contends that Vick was deliberately indifferent because she left a piece of staple in his arm and did not properly clean his wound, which led to an infection. Id.

1. *June 13, 2023 Incident*

The plaintiff contends that Lambert and Straughter acted with deliberate indifference because he showed them that he had a razor blade and wanted to harm himself, but they walked off and did not help him. Dkt. No. 64 at 13. "Prison officials violate the Eighth Amendment's prohibition on cruel and

10

Case 2:23-cv-01467-PP   Filed 02/24/26   Page 10 of 17   Document 67

unusual punishment when they act or fail to act with 'deliberate indifference to serious medical needs of prisoners.'" Whitaker v. Dempsey, 144 F.4th 908, 916 (7th Cir. 2025) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To succeed on his claim of deliberate indifference to a serious medical need, the plaintiff must show that (1) he faced a substantial risk of harm due to an objectively serious medical condition and that (2) a prison official knew of and disregarded the risk. Id. (citing Palmer v. Franz, 928 F.3d 560, 563-64 (7th Cir. 2019)). "A genuine risk of suicide or self-harm constitutes an objectively serious medical condition." Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019) (suicide); Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018) (self-harm).

The plaintiff's summary judgment motion is unopposed regarding this claim. But despite the defendants' failure to respond to the plaintiff's summary judgment motion regarding the June 13, 2023 claim, the plaintiff is not entitled to summary judgment. The plaintiff did not file along with his motion proposed findings of fact that cite to the record, as required by Civil Local Rule 56(b)(1)(C) (E.D. Wis.). Even if the court considers the verified amended complaint as a declaration at summary judgment, that pleading alone does not demonstrate that the plaintiff is entitled to summary judgment. Assuming that it is undisputed that Lambert and Straughter ignored the plaintiff and refused to get him help when he said he had a razor and wanted to cut himself and that the plaintiff did cut himself on his arm, the plaintiff has not established that he suffered a compensable injury under §1983. See Whitaker v. Dempsey, 144 F.4th 908, 925 (7th Cir. 2025) (to 'succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.'") (quoting Gabb

11

v. Wexford Health Sources, Inc., 945 F.3d 1027, 1032 (7th Cir. 2019); see also Lord v. Beahm, 952 F.3d 903-04 (7th Cir. 2020) (incarcerated person who displayed a razor blade and threatened to commit suicide and whose wounds were limited to a few minor scratches on his forearm which were quickly and easily treated with a gauze bandage did not suffer an injury compensable under §1983).

This is not to say that the plaintiff did not suffer a compensable injury under §1983. If this case goes to trial, he will have the opportunity to prove to the jury or judge that he suffered a compensable injury. But at the summary judgment stage, he has not described his injury at all. The plaintiff has not met his burden of showing that he is entitled to summary judgment on this claim. See Hotel 71 Mez Lender LLC v. Nat'l Ret. Rund, 778 F.3d 593, 601 (7th Cir. 2015) (plaintiff moving for summary judgment has heavy burden and must prove all essential elements of his claim); see also Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994) (even an unanswered motion for summary judgment cannot be granted unless the movant has shown that the facts warrant judgment in its favor). The court will deny the plaintiff's motion for summary judgment regarding the June 13, 2023 claim.

### 2. *June 15, 2023 Incident*

With regard to the June 15 incident, the defendants appear to concede that the plaintiff has satisfied the objective element of an Eighth Amendment claim. Dkt. No. 50 at 7. The court agrees. It is undisputed that the plaintiff cut his arm with a staple, thereby satisfying the Eighth Amendment's objective requirement. See Whitaker, 144 F.4th at 925 ("A genuine risk of suicide or self-harm is an objectively serious medical condition, so the failure to respond to

12

and mitigate a meaningful risk of either may amount to deliberate indifference.").

But the defendants contend that Marwitz and Bittner did not act with deliberate indifference because they did not know that the plaintiff would harm himself. (The defendants do not contend that Kramer did not act with deliberate indifference.) The video evidence supports the defendants' argument. It shows Marwitz telling the plaintiff that he would get Spiderman/Wiltgen when the plaintiff asked about him. When Marwitz left the plaintiff's cell, he told Wiltgen that the plaintiff wanted to talk to him. The plaintiff alleges in the amended complaint that he told Marwitz, "I will self-harm," and that Marwitz walked away. Dkt. No. 10 at 6. The video of the interaction does not support the plaintiff's version of events. But even if the plaintiff did make that statement to Marwitz, he didn't say when or how he would self-harm. And, as stated above, Marwitz told Wiltgen that the plaintiff wanted to see him, as the plaintiff had requested. Marwitz did not fail to respond to an imminent threat that the plaintiff would harm himself. See Johnson v. Garant, 786 F. App'x 609, 609-10 (7th Cir. 2019). As for Bittner, the record shows only that Bittner walked by the plaintiff's cell when the plaintiff's arm was hanging out of the cell trap. The video does not show that the plaintiff said anything to Bittner. Bittner did not act with deliberate indifference.

Regardless of whether the defendants acted with deliberate indifference, they contend that the plaintiff did not suffer a cognizable injury. As explained above, to "succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.'" Whitaker, 144 F.4th at 925 (citing Gabb, 945 F.3d at 1032). The plaintiff's injury consisted of two small lacerations on his

left arm with a straightened staple sticking out of one of them. One wound was seven to eight millimeters, and the other was less than eleven to twelve millimeters. There was no active bleeding. Vick removed the staple with a sterilized tweezer, cleaned each wound with Dermal wound cleanser and applied a 2x2 wet gauze and a 4x4 gauze to cover both wounds. This injury, without more, does not amount to a cognizable harm. See Lord, 952 F.3d at 903-04; see also Braithwaite v. Bille, Case No. 17-cv-706, 2022 WL 1241185, at *2 (E.D. Wis. Apr. 27, 2022) (injury that "consisted of superficial skin abrasions and the nurse's notes show was treatable with a bandage and cream, was not a cognizable physical injury"); Phillips v. Deidrick, Case No. 18-C-56, 2019 WL 318403, at *3 (E.D. Wis. Jan. 24, 2019) (plaintiff did not face an objectively serious risk where he used a small razor to make superficial cuts on his arm); Washington v. Johnson, Case No. 23-CV-485, 2025 WL 101617, at *4 (E.D. Wis. Jan. 15, 2025) (no recoverable injury for lip laceration when plaintiff received prompt medical treatment and did not require stitches). The plaintiff did not suffer a compensable injury regarding this claim. The court will deny the plaintiff's motion for summary judgment and grant the defendants' motion for partial summary judgment regarding the plaintiff's Eighth Amendment claim that Martwitz, Kramer and Bittner were deliberately indifferent to his self-harm on June 15 and 16, 2023.

Turning to the plaintiff's medical care claim related to Nurse Vick's treatment of his arm, the record shows that Vick provided appropriate medical care and established a wound care follow-up plan to monitor and treat the wound. The plaintiff states that he contracted an infection from a foreign object being left in his body. Dkt. No. 65 at ¶44. He says that if Vick had properly done her job he would not have been infected or needed surgery. Id. at ¶45.

14

The plaintiff cites to an operative medical note from September 15, 2023 (three months after the incident in this lawsuit), in which a doctor removed "[p]ieces of *paperclip* and cotton like material" from his arm. Dkt. No. 38-1 at 38-39 (emphasis added). The plaintiff has not demonstrated that this medical procedure is related to Vick's removal of the *staple* from his arm on June 16, 2023. He has not demonstrated that the operative note is relevant to his claim.

Vick treated the plaintiff at his cell, and she provided the same treatment she would have if the two had been in the HSU exam room. The plaintiff has not shown that Vick's treatment of him was "so significant a departure from accepted professional standards or practices that it calls into question whether [she] actually was exercising . . . professional judgment." Riley v. Waterman, 126 F.4th 1287, 1295 (7th Cir. 2025) (quoting Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014)). A reasonable factfinder could not conclude that Vick acted with deliberate indifference in treating the plaintiff's arm. Similarly, based on the court's determination that Vick adequately treated the plaintiff's arm and that she is entitled to summary judgment, Marwitz and Kramer are not liable for failing to provide the plaintiff with medical care.

The court will deny the plaintiff's motion for summary judgment. Because the defendants' motion for summary judgment does not address all the plaintiff's claims, the court construes it as a motion for partial summary judgment. The court will grant the motion and dismiss the plaintiff's Eighth Amendment failure-to-protect claims against Marwitz, Kramer, Bittner and his medical care claims against Marwitz, Kramer and Vick stemming from the June 15, 2023 incident. The court will calendar a status conference to discuss further proceedings regarding the plaintiff's Eighth Amendment failure-to-

protect claim against Straughter and Lambert based on the June 13, 2023 incident.

## IV. Plaintiff's Motions for Sanctions (Dkt. Nos. 59, 63)

The plaintiff filed two motions for sanctions. In the first one, he seeks sanctions based on the defendants' alleged failure to mail him their summary judgment motion after filing it. Dkt. No. 59. The record shows that the plaintiff did not receive the defendants' motion right away because the defendants mailed it to the wrong address. Dkt. No. 60. The court ordered the defendants to mail their motion to the plaintiff at the correct address, which they did. Dkt. No. 61. As a result of the incorrect mailing, the court extended the time for the plaintiff to respond to the defendants' motion. Id. The plaintiff is not entitled to sanctions for the defendants' failure to mail the motion to the correct address, especially because the error was corrected and the court granted the plaintiff more time to file his response. The court will deny this motion for sanctions.

In the plaintiff's second motion, he seeks sanctions for the defendants' alleged failure to follow the discovery scheduling order by not mailing a complete summary judgment motion. Dkt. No. 63. The plaintiff appears to contend that he is entitled to sanctions because the defendants filed a motion for summary judgment, but their motion does not seek dismissal of all his claims. The plaintiff is correct that the defendants' motion erroneously states that they seek dismissal of the case, but the body of the summary judgment motion does not request dismissal of all the plaintiff's claims. The court does not know whether defense counsel meant to file a motion for *partial* summary judgment or whether counsel forgot to include the plaintiff's claim from the June 13, 2023 incident in their motion. Either way, the defendants' conduct appears to be the result of an error, not intentional misconduct, which does

16

not warrant sanctions. And the plaintiff has not suffered prejudice because the claim regarding the June 13 incident, which the defendants did not address at summary judgment, has survived. The court will deny the plaintiff's second motion for sanctions.

**V.      Conclusion**

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 38.

The court **CONSTRUES** the defendants' motion for summary judgment as a motion for partial summary judgment and **GRANTS** the motion. Dkt. No. 49. The court **ORDERS** that the plaintiff's Eighth Amendment failure-to-protect and medical care claims based on the events that took place on June 15 and 16, 2023 are **DISMISSED**.

The court **DISMISSES** defendants Kramer, Bittner, Vick and Marwitz.

The court **DENIES** the plaintiff's motions for sanctions. Dkt. Nos. 59, 63.

The court **ORDERS** that the parties must appear for a telephonic status conference to discuss further proceedings on the plaintiff's Eighth Amendment claim against defendants Straughter and Lambert based on the events that took place on June 13, 2023. That hearing will take place on **March 16, 2026 at 11:00 AM**. The defendants must appear by calling the court's conference line at 551-285-1373 and entering Meeting ID 161 4901 8989 and Passcode 190021 when prompted. The court has arranged with the Kenosha County Jail for the plaintiff's appearance at the hearing.

Dated in Milwaukee, Wisconsin this 24th day of February, 2026.

BY THE COURT:

_____
HON. PAMELA PEPPER
**Chief United States District Judge**